**United States District Court**
**For the Northern District of California**

**E-FILED on** _4/20/12_

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| GLT TECHNOVATIONS, LLC, a Nevada limited liability company,<br><br>        Plaintiff,<br><br>    v.<br><br>FOWNES BROTHERS & CO., INCORPORATED, a New York corporation,<br><br>        Defendant. | No. 12-cv-00466 RMW<br><br>ORDER GRANTING MOTION TO TRANSFER<br><br>**[Re Docket No. 7]** |

Defendant Fownes Brothers & Co., Inc. moves for an order dismissing, staying or transferring the instant action to the United States District Court for the Southern District of New York. For the reasons below, the court finds that the Southern District of New York is the more appropriate forum to hear this dispute, and therefore grants the motion to transfer.

## I. BACKGROUND

Plaintiff GLT Technovations, LLC ("GLT") is a California-based company that developed a "capacitive leather" technology called TouchTec that allows a user to operate a touchscreen electronic device while wearing leather gloves. Dkt. No. 26 (Am. Compl.) ¶¶ 1, 7. TouchTec was allegedly invented by GLT's founder and Chief Technology Officer, Gerald Leto ("Leto"), sometime

between 2008 and 2009. *Id.* at ¶¶ 9-10, 17. GLT has filed patent applications for TouchTec in multiple jurisdictions, but has not yet been issued a patent. *See* Dkt. No. 9 (Morris Decl.), Ex. 5.

TouchTec-enabled leather is manufactured exclusively by Broleco WorldWide, Inc. ("Broleco"), which is based in Massachusetts. *See Id.*, Ex. 15; Am. Compl. ¶ 16. GLT authorizes Broleco to market TouchTec-enabled leather to third party glove manufacturers on GLT's behalf. *Id.* Broleco is also authorized to share GLT's "trade secret information," including "capabilities, functionality, upcoming products and techniques relating to the use of capacitive leather," with third parties after such parties execute a non-disclosure agreement ("NDA"). *Id.*

Defendant Fownes Brothers & Co., Inc. ("Fownes") is an apparel designer and manufacturer headquartered in New York. Am. Compl. ¶ 2, 19. Fownes expressed an interest TouchTec after GLT presented the technology at New York City's "Fashion Week" in September 2009. *Id.* ¶ 20. In April 2010, GLT and Fownes entered into an NDA for the purpose of "evaluating or pursuing a business relationship between the parties." *Id.*, Ex. A. The NDA prohibits certain uses of confidential information disclosed by either party and contains a California choice-of-law provision. *Id.* ¶ 10. Although GLT and Fownes are the only parties to the NDA, the agreement was sent to Fownes by Broleco, and Fownes never communicated directly with GLT regarding its terms. *See* Morris Decl., Ex. 15.

After the execution of the NDA, a Broleco salesperson presented the TouchTec technology to Fownes at Fownes' office in New York. Am. Compl. ¶ 31; Morris Decl., Ex. 15. In February 2011, Fownes purchased two orders of TouchTec-enabled leather through Broleco. Am. Compl. ¶¶ 34-35. In connection with those purchases, a Fownes representative also visited Broleco's warehouse in Johnstown, New York. *Id.*, Ex. 17. All other communications regarding Fownes' purchase of TouchTec-enabled leather took place through Broleco. *Id.*, Exs. 15-17.

Sometime following its initial two purchases from Broleco, Fownes announced the development of its own glove products using another supplier's touchscreen-enabled technology. Am. Compl. ¶ 38. Thereafter, Fownes did not place any additional orders for TouchTec-enabled leather. *Id.* ¶ 37. According to GLT, Fownes' new products include confidential and proprietary

1 features of GLT's TouchTec technology that were disclosed to Fownes pursuant to the NDA.  *Id.* ¶¶
2 38-39.

**A.     Communications between the parties prior to the initiation of litigation**

On January 20, 2012, Leto sent an email to Fownes' Vice President Even Dunlop indicating that TouchTec leather is a "patent pending product" and asking Mr. Dunlop to contact GLT's legal counsel Brian McCormack ("McCormack") regarding the "legal and financial ramifications of both breach … of the NDA and penalties for patent infringement."  Morris Decl., Ex. 1.  On January 23, 2012, McCormack authored a letter (the "Threat Letter") intended for distribution to sellers of Fownes' touchscreen-enabled gloves stating that GLT "stands ready to enforce its NDAs … and … its patent rights … to stop unfair copying of its proprietary technology."  Morris. Decl., Ex. 2; Dkt. No. 28 at 4.  Shortly thereafter, Fownes obtained a copy of the threat letter, which Fownes asserts was disseminated to buyers at various major retailers who were "misled into thinking they would be immediately liable for patent infringement if they purchased Fownes' new gloves."  Dkt. No. 7 at 4.

On January 26, 2012, Fownes' attorney Robert Morris ("Morris") sent McCormack an email asking him to retract any communications related to Fownes' allegedly unlawful sale of touchscreen-enabled leather gloves.  *See* Am. Compl., Ex. B.  Morris indicated that Fownes' position was that GLT had no patent rights to enforce and that Fownes had not misappropriated GLT's confidential information because when the NDA was executed in 2010, "GLT's technology had already been publicly announced at the Fall 2009 Fashion Week and any subsequent communications between [the parties] were merely about the price and quantity of a proposed transaction."  *Id*.  Morris also warned that if he did not hear back from McCormack by noon the following day, he would exercise Fownes' "legal rights to enjoin further unlawful conduct by Mr. Leto [and] GLT."  *Id.*

At 12:07 P.M. on January 27, 2012, Morris received an email from Kimberly Rich ("Rich"), another attorney in McCormack's office, stating that the threat letter was a "draft" based on an "incomplete gathering of relevant facts" and not authorized for distribution to outside parties, but that GLT intended to enforce its patent rights once a TouchTec patent was issued.  Morris Decl., Ex. 5. Morris wrote back immediately, claiming that numerous retailers had cancelled orders from Fownes based on the "false threat of patent litigation" and indicating that if he did not hear back

ORDER GRANTING MOTION TO TRANSFER
No. 12-cv-00466 RMW
EDM                                                    3

from Rich within thirty minutes, Fownes would seek judicial relief. *Id.*, Ex. 6. After another series of emails, the parties agreed to review the issues and communicate the following Monday, January 30, 2012. *See id.*, Ex. 7. Morris made clear that if the problem was not resolved by 10 A.M. that day, Fownes would be "heading to Court." *Id.* At approximately 10 A.M. on January 30, 2012, McCormack called Morris and told him that GLT stood by its letter as written and did not intend to issue a retraction. *Id.*, Ex. 8.

**B. The initiation of litigation**

At 12:17 P.M. EST that afternoon, Fownes filed a complaint before the United States District Court for the Southern District of New York. *See id.*, Ex. 9-10. The complaint alleged claims against GLT, Leto and Broleco[1] for violations of the Lanham Act, unfair competition and tortious interference with business relations based on the distribution of the threat letter. *Id.* Approximately four hours later, GLT filed a complaint against Fownes before this court, seeking a declaratory judgment that it did not violate the Lanham Act and asserting claims for misappropriation of trade secrets, breach of the NDA and unfair competition. *See* Dkt. No. 1. GLT's state law claims were based on allegations that Fownes had wrongfully misappropriated proprietary information disclosed pursuant to the NDA in developing its own line of touchscreen-enabled gloves. *Id.*

On February 28, 2012, Fownes filed the instant motion, requesting that this action be dismissed, stayed or transferred to the Southern District of New York. GLT subsequently amended its complaint, dropping its claim for declaratory relief but maintaining its remaining trade secret, contract and unfair competition claims.

## II. DISCUSSION

Fownes argues that transfer is appropriate under both the first-to-file rule and 28 U.S.C. § 1404(a). Because the court finds transfer proper under Section 1404(a), it does not reach the question of whether transfer would also be available under the first-to-file rule.

**A. Transfer under 28 U.S.C. § 1404(a)**

---

[1] The New York complaint also named The Grandoe Corporation, the company that allegedly disseminated the threat letter to retailers. Grandoe has since been dismissed from the New York action, and is not a party to this action.

ORDER GRANTING MOTION TO TRANSFER
No. 12-cv-00466 RMW
EDM 4

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil matter to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). The purpose of Section 1404(a) is to "prevent the waste of time, energy, and money and to protect litigants, witnesses and the public against unnecessary inconvenience and expense." *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964) (internal citations and quotation omitted). A motion for transfer lies within the broad discretion of the district court, and is subject to an "individualized, case-by-case consideration of convenience and fairness." *Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498 (9th Cir. 2000).

To support a motion for transfer, the moving party must first establish that venue is proper in the transferor district. *Goodyear Tire & Rubber Co. v. McDonnell Douglas Corp.*, 820 F. Supp. 503, 506 (C.D. Cal. 1992). Where, as here, the non-moving party does not dispute the propriety of venue in both districts, courts evaluate a number of factors to determine whether transfer is appropriate, including: (1) the plaintiff's choice of forum, (2) convenience of the parties, (3) convenience of the witnesses, (4) ease of access to the evidence, (5) familiarity of each forum with the applicable law, (6) feasibility of consolidation with other claims, (7) any local interest in the controversy, and (8) the relative court congestion and time of trial in each forum. *See Williams v. Bowman*, 157 F. Supp. 2d 1103, 1106 (N.D. Cal. 2001).

### 1. Plaintiff's choice of forum

Generally, a plaintiff's choice of forum should be afforded substantial weight. *Carolina Cas. Co. v. Data Broadcasting Corp.*, 158 F. Supp. 2d 1044, 1048 (N.D. Cal. 2001). However, the "degree to which courts defer to the plaintiff's chosen venue is substantially reduced where … the forum lacks a significant connection to the activities alleged in the complaint." *Id.* (quoting *Royal Queentex Enterprises v. Sara Lee Corp.*, No. 99-4787, 2000 WL 246599, at *3 (N.D. Cal. March 1, 2000)); *Teknekron Software Systems, Inc. v. Cornell University*, No. 93-20122, 1993 WL 215024, at * 7 (N.D. Cal. June 14, 1993) (although plaintiff was a California resident, its choice of forum was entitled to little deference where "the center of gravity for this action is in New York, not California").

Here, it is clear that the "center of gravity" of the parties' dispute is in New York–or at least the Northeast–not in California. *Id.* The NDA, which gives rise to GLT's breach of contract claims, was executed by Fownes in its New York office and sent from Broleco's office in Massachusetts. To the extent that any confidential information was disclosed to Fownes, such disclosure appears to have occurred during Broleco's presentation in Fownes' New York office or Fownes' representative's visit to Broleco's New York factory. Indeed, all of Fownes' communications concerning the purchase of TouchTec-enabled leather occurred through Broleco in New York or Massachusetts; prior to Leto's email to Even Dunlop in January 2012, GLT and Fownes had no direct communication at all. Moreover, any use of GLT's proprietary information in the design or manufacture of Fownes' touchscreen-enabled gloves would have taken place either at Fownes' New York offices or factories or the offices of Fownes' "other supplier."[2] Given that there is little connection between the Northern District of California and the activities alleged in the complaint, GLT's choice of forum is entitled to only slight deference.

**2.     Convenience of the parties and witnesses**

"The convenience of the witnesses is often the most important factor in resolving a motion to transfer." *Motorola Mobility, Inc. v. Microsoft Corp.*, No. 11-3136, 2011 WL 5834923, at *3 (N.D.Cal. Nov. 21, 2011) (quoting *Ruiz v. Affinity Logistics*, No. 05–0201, 2005 WL 5490240, at *3 (N.D. Cal. Nov. 7, 2005)). In considering the convenience factor, the court should consider "not only the number of witnesses located in the respective districts, but also the nature and quality of their testimony in relationship to the issues in the case." *Kannar v. Alticor*, *Inc.*, No. 08-5505, 2009 WL 975426, at *2 (N.D. Cal. April 09, 2009). "Primary consideration is given to third party, as opposed to employee witnesses." *Id.* (quoting *Royal Queentex Enterprises*, 2000 WL 246599, at *6).

Because GLT bases its claims almost entirely on the interactions between Fownes and Broleco, the most important witnesses in this action are likely located in New York or Massachusetts. Fownes has submitted declarations from three employees involved in the purchase

---

[2]     Fownes' "other supplier" is not a party to this action, and neither GLT nor Fownes has identified its name or location.

ORDER GRANTING MOTION TO TRANSFER
No. 12-cv-00466 RMW
EDM                                                          6

of TouchTec-enabled leather from Broleco, each of whom would probably be a witness in this case and all of whom identify their location as either New York City or Gloversville, New York. *See* Morris Decl., Exs. 15-17. More importantly, the only non-employee witness to be identified by either party is GLT's Broleco representative Kerry Brozyna, who lists the Broleco headquarters in Massachusetts as his address. *See id.*, Ex. 15. While Massachusetts is clearly not located in the Southern District of New York, that forum would be significantly more convenient for Mr. Brozyna than the Northern District of California. *See Kannar*, 2009 WL 975426, at *2 (finding that the Central and Northern Districts of California would be more convenient than the Western District of Michigan for witnesses who live in Australia given the additional travel time required to reach Michigan); *In re TS Tech USA Corp.*, 551 F.3d 1315, 1320 (Fed. Cir. 2008) ("It goes without saying that [a]dditional distance [from home] means additional travel time; additional travel time increases the probability for food and lodging expenses; and additional travel time with overnight stays increases the time which these fact witnesses must be away from their regular employment.") (internal citation and quotation marks omitted).

Furthermore, because the alleged misconduct underlying GLT's complaint took place in the Northeast, other non-party witnesses who have yet to be identified will probably also find the Southern District of New York more convenient than this forum. In addition, Fownes' defense—that any "confidential information" disclosed by GLT was publicly announced during "Fashion Week" in New York City and that subsequent communications between GLT and Fownes concerned only price and quantity of a proposed transaction—may also require the testimony of New York-based witnesses. *See* Morris Decl., Ex. 4.

Of course, as GLT points out, Leto is located in California, and his testimony is relevant to the parties' "understanding" and "execution" of the NDA. Dkt. No. 28 at 12. GLT also alleges in its opposition that "other employees of GLT" met with Fownes following the execution of the NDA, but does not identify any such employees or specify the relevance of their testimony. *Id.* Either way, since Leto and GLT are already involved in litigation in the New York forum that will likely require overlapping testimony with this case (*see* Section 5 below), any *additional* inconvenience to those witnesses is minimal. Furthermore, given the relative importance of Leto's testimony

compared to that of the Northeast-based witnesses, and the fact that the majority of witnesses and the only non-party witness are located in or close to New York, the court finds that the convenience factor weighs in favor of transfer.

GLT also argues that because Leto and other GLT employees live more than 100 miles from New York, they cannot be compelled to appear at trial if this action is transferred. However, as GLT is the plaintiff in this action, the court assumes that GLT witnesses, and Leto in particular, will *choose* to testify on GLT's behalf given the consequences of declining to do so. Thus, while GLT's argument might support a motion to transfer the New York action to this forum, it is simply irrelevant for the purposes of this motion.[3]

### 3. Ease of access to evidence

As discussed above, with the exception of Leto's signing of the NDA, all of the events relevant to this litigation took place in the Northeast. Each of the face-to-face meetings between Fownes and Broleco occurred in New York, and all of the written communications between the two entities, which will comprise most of the documentary evidence in this action, are probably stored on computers in either New York or Massachusetts. *See Italian Colors Rest. v. Am. Express Co.*, No. 03-3719, 2003 WL 22682482, at *5 (N.D. Cal. Nov. 10, 2003) ("Documents pertaining to defendants' business practices are most likely to be found at their principal place of business."). In addition, Fownes' and Broleco's books and sales records, which will be relevant in sustaining any damages theory advanced by GLT, are most likely to be located in each entity's Northeast headquarters. This court has previously observed that "the cost of litigation will be substantially lessened if the action is venued in the same district where most of the documentary evidence is found." *Id*. Thus, although GLT's records are in California, the fact that the majority of the pertinent documents are located in New York or Massachusetts strongly supports transfer.

### 4. Familiarity with applicable law

GLT argues that this case belongs in California because its claims arise under California statutes and common law and the NDA contains a California choice-of-law provision. It is true that

---

[3] To the court's knowledge, GLT has not filed a motion to transfer the New York action to this district.

ORDER GRANTING MOTION TO TRANSFER
No. 12-cv-00466 RMW
EDM                                    8

this court is probably more familiar with California law than other courts, but "it is also true that other federal courts are fully capable of applying California law." *Foster v. Nationwide Mut. Ins. Co.*, No. 07-04928, 2007 WL 4410408, at *6 (N.D. Cal. Dec. 14, 2007); *Metz v. United States Life Ins. Co.*, 674 F. Supp. 2d 1141, 1148 (C.D. Cal. 2009) ("Judges in each jurisdiction are fully capable of deciding issues arising under both California and New York law.") (internal citation and quotation marks omitted). Furthermore, unlike a forum selection clause, a choice-of-law provision is not generally determinative in resolving a motion to transfer. *Compare IBC Aviation Servs. v. Compania Mexicana De Aviacion, S.A. de C.V.*, 125 F. Supp. 2d 1008, 1013 (N.D. Cal. 2000) (noting that "where the underlying contract designates a specific forum, federal courts generally uphold the parties' designated forum,  rather than merely requiring compliance with § 1441."). Therefore, while this factor weighs slightly against transfer, it is not dispositive.

### 5. Possibility of consolidation with other actions

Fownes argues that transfer will allow for better coordination with the action currently pending in New York, which involves substantially the same subject matter and parties. The court agrees. In fact, GLT has already raised issues related to the breach of the NDA and misappropriation of trade secrets in the New York action as part of an unclean hands defense. *See* Morris Decl., Ex. 12. As the New York court has already held two preliminary injunction hearings on Fownes' claims, *see* Dkt. No. 28 at 7, transfer would reduce the possibility of either party "benefitting by taking inconsistent positions and allow all disputes to be heard by a judge who is familiar with the parties and their arguments." *Heartland Payment Systems, Inc. v. Verifone Israel Ltd.*, No. 10-0654, 2010 WL 1662478, at *5 (N.D. Cal. April 22, 2010) (granting motion to transfer under Section 1404(a) where the two suits were filed so close together that the first-to-file rule was not dispositive).

GLT contends that Leto is not subject to personal jurisdiction in New York, and that "full" consolidation of both actions in New York is therefore impossible. Dkt. No. 28 at 14. However, as Leto is not a party to this action, his contacts with New York will not affect the New York court's jurisdiction over *this* case. Again, GLT's argument is more appropriately made to a New York judge in favor of a motion to transfer the New York action to this district than the other way around.

ORDER GRANTING MOTION TO TRANSFER
No. 12-cv-00466 RMW
EDM                                                             9

1  Furthermore, it appears to this court that although Leto is a defendant in the New York action, he is
2  not a necessary party so long as GLT remains in the case.  As GLT does not challenge its
3  susceptibility to personal jurisdiction in New York, this court has little doubt that both actions could
4  be effectively and efficiently litigated before a single judge in the Southern District of New York.
5  This factor therefore weighs heavily in favor of transfer.

**6.     Remaining Factors**

The court agrees with GLT that California has an interest in the protection of the intellectual property rights of local businesses, and that such an interest supports keeping the case in this forum. However, given the bi-coastal nature of the transactions at issue and the parties impacted by this case, it cannot be characterized as a "localized controversy" in which this forum has a greater interest than the state of New York.  *Compare Metz*, 674 F. Supp. 2d at 1148 (finding transfer to New York appropriate where resolution of the case "will have a tremendous financial impact on the state of New York and almost no impact on any of the other forty-nine states").  Finally, as neither party has submitted any evidence or argument regarding the relative congestion of the courts' dockets or time to trial, the court will consider that factor to be neutral.

In sum, the balance of the factors, particularly the convenience to witnesses, the ease of access to evidence, and the possibility of consolidation with other litigation, weighs in favor of transferring this case to the Southern District of New York.  Accordingly, Fownes' motion to transfer is granted.

**III.  ORDER**

For the foregoing reasons, the court grants Fownes' motion to transfer, and orders this action to be transferred to the United States District Court for the Southern District of New York.

DATED:     April 20, 2012                              *Ronald M. Whyte*
                                                       RONALD M. WHYTE
                                                       United States District Judge

ORDER GRANTING MOTION TO TRANSFER
No. 12-cv-00466 RMW
EDM                                                  10

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**United States District Court**
For the Northern District of California